UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00600-FDW-DSC

| | |
|---|---|
| LEO THOMPSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CITY OF CHARLOTTE, )<br>)<br>Defendant. )<br>) | ORDER |

THIS MATTER is before the Court on Defendant City of Charlotte's Motion for Judgment as a Matter of Law or, in the alternative, for A New Trial (Doc. No. 34). For the reasons stated below, Defendant's Motion for Judgment as a Matter of Law is GRANTED.

BACKGROUND

Leo Thompson ("Plaintiff") filed this action against the City of Charlotte ("Defendant") on October 6, 2017, alleging (1) race discrimination under 42 U.S.C. § 1981; (2) wrongful termination in violation of North Carolina public policy (NCEPA); (3) race discrimination under Title VII; (4) violation of the Americans with Disabilities Act (ADA); and (5) retaliation. (Doc. No. 1). This Court dismissed Plaintiff's § 1981 claim upon Defendant's motion for summary judgment. (Doc. No. 16). Upon Defendant's motion for judgment as a matter of law, this Court dismissed Plaintiff's Title VII race discrimination claim. (Trial Tr., Sept. 11, 2018, p. 56). The Court submitted Plaintiff's remaining claims to the jury. The jury returned the verdict in Defendant's favor on Plaintiff's ADA and NCEPA claims but found for Plaintiff on his retaliation claim. (Doc. No. 31).

At trial, Defendant made a motion for judgment as a matter of law as to Plaintiff's retaliation claim. (Trial Tr., Sept. 12, 2018, p. 111). The Court granted the motion in part and

denied it in part on the issue of whether the alleged acts constituted protected activity. (Trial Tr., Sept. 12, 2018, p. 122). Defendant objected to the Court's ruling that Plaintiff's calls to the Employee Assistance Program (EAP) constituted protected activity. (Trial Tr., Sept. 12, 2018, p. 122). Pursuant to Rule 50 of the Federal Rules of Civil Procedure, Defendant now moves for judgment as a matter of law or, in the alternative, for a new trial pursuant to Rule 59(a) on Plaintiff's retaliation claim. (Doc. No. 34). Discussion of the relevant evidence is provided throughout as needed to explain the Court's decision.

STANDARD OF REVIEW

A Rule 50(b) motion "assesses whether the claim should succeed or fail because the evidence developed at trial was insufficient as a matter of law to sustain the claim." Belk, Inc. v. Meyer Corp., 679 F.3d 146, 155 (4th Cir. 2012). The moving party must have moved under Rule 50(a) for relief on similar grounds to move after trial under Rule 50(b). See Fed. R. Civ. P. 50; Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008). Failure to move under Rule 50(a) and appraise the court of the alleged insufficiency of the suit results in waiver of that unraised insufficiency. See Varghese v. Honeywell Int'l, Inc., 424 F.3d 411, 423 (4th Cir. 2005); Price v. City of Charlotte, 93 F.3d 1241, 1248-49 (4th Cir. 1996); Bridgetree, Inc. v. Red F. Marketing LLC, No. 3:10-cv-00228-FDW-DSC, 2013 WL 443698, at *17 (W.D.N.C. Feb. 5, 2013). When considering a Rule 50 motion, the court cannot reweigh the evidence or consider the credibility of the witness and must view "all the evidence in the light most favorable to the prevailing party and draw all reasonable inferences in [the prevailing party's] favor." Konkel v. Bob Evans Farms, Inc., 165 F.3d 275, 279 (4th Cir. 1999). A jury's verdict will withstand a motion under Rule 50 unless the court "determines that the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party." Tools USA and Equip. Co. v. Champ Frame

Straightening Equip., Inc., 87 F.3d 654, 656-57 (4th Cir. 1996) (quoting Winant v. Bostic, 5 F.3d 767, 774 (4th Cir. 1993)); see also Konkel, 165 F.3d at 279. When ruling on a motion under Rule 50(b), the court may allow judgment on the verdict, order a new trial, or direct entry of judgment as a matter of law. Fed. R. Civ. P. 50(b).

ANALYSIS

Under the Americans with Disabilities Act (ADA), "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). A prima facie case for retaliation requires that a plaintiff prove (1) that he engaged in protected activity; (2) that his employer took an adverse employment action against him; and (3) that there was a causal link between the two events. Laber v. Harvey, 438 F.3d 404, 432 (4th Cir. 2006).

A protected activity is an action that an employee takes to oppose "what he or she believes is an unlawful employment practice." Bowman v. Baltimore City Bd. of Sch. Comm'rs, 173 F. Supp. 3d 242, 248 (D. Md. 2016); see also DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015) (applying a similar definition). A plaintiff need not establish that the conduct opposed actually violates the ADA, but rather, must establish a "predicate for a reasonable good faith belief that the behavior [they are] opposing violates the ADA." Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002). If an action does not oppose any sort of unlawful conduct, then it is not protected activity and cannot sustain a claim for retaliation. See Johnson v. Mechanics & Farmers Bank, 309 F. App'x 675, 686 (4th Cir. 2009) ("[I]t is fundamental that to receive protection . . . [a plaintiff] must be engaging reasonably in activities *opposing* discrimination.") (internal quotations omitted and emphasis added).

To determine whether an action is a protected activity, courts use a two-step test. At step one, the Court must determine whether the employee "communicates to [his] employer a belief that the employer has engaged in . . . a form of employment discrimination." Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., 555 U.S. 271, 276 (2009). If the Court finds that step one is satisfied, the Court then considers whether "this communicated belief concerns a practice that is 'actually unlawful under Title VII' or that the employee 'reasonably believes to be unlawful.' Bowman, 173 F. Supp. 3d at 248 (quoting Boyer–Liberto v. Fontainebleau Corp., 786 F.3d 264, 282 (4th Cir. 2015)). This determination must be made by analyzing "plaintiff's course of conduct as a whole." DeMasters, 796 F.3d at 418. "To determine whether an employer should have understood the complaint to constitute a protected activity, a court must consider whether the employer could have understood the complaint in the context in which it was made." Bowman, 173 F. Supp. 3d at 248.

It is the first element of this inquiry, whether Plaintiff communicated his belief to his employer, that necessitates that the Court reverse its decision that Plaintiff's calls to the EAP constituted protected activity. As a general rule, "[g]eneral complaints of unfair treatment are not protected activity." Id. (citing Romeo v. APS Healthcare Bethesda, Inc., 876 F. Supp. 2d 577, 587 (D. Md. 2012)). To constitute protected activity, the employer must have understood, or should have understood, that the plaintiff opposed discriminatory conduct. See id; Burgess v. Bowen, 466 F. App'x. 272, 282 (4th Cir. 2012).

In Bowman, the plaintiff alleged that her repeated complaints about her large classroom size to the principal and school administrators constituted protected activity. 173 F. Supp. 3d at 248. There, the court held that the initial complaints, alone, were insufficient to constitute protected activity because plaintiff did not allege racially discriminatory conduct. Id. at 248-49 (holding that

"these initial complaints related only to general unfair treatment resulting from the large classroom size"). However, the court held that plaintiff's later complaints constituted protected activity because they "conveyed the purported racial impetus." See id. at 249 ("Bowman allegedly expressed to Broom her belief that the addition of a new teacher to the fourth grade class lightened the workload of Tousignant, a Caucasian teacher."). The later complaints that alleged an impermissible racial bias were considered protected activities while the earlier complaints that "related only to general unfair treatment" were not considered protected activities. See id..

Freilich v. Upper Chesapeake Health, Inc. states a similar principle. 313 F.3d 205 (4th Cir. 2002). In Freilich, a physician brought a suit against a private hospital for retaliation under the ADA. Id. at 216. The plaintiff argued that she was fired "because she strongly opposed and voiced her concerns about [the hospital's] practices in treating dialysis patients." Id. However, the Fourth Circuit held that these complaints "at most[,] are violations of state medical malpractice law, not infractions of the ADA." Id. Since the communication did not challenge an infraction of the ADA, it was not considered a protected activity. See id. at 217 (holding that plaintiff could not "reasonably believe that her disagreement . . . over the expenditure of hospital resources constituted a violation of the ADA."). Thus, even when a communication alleges violations that are unlawful under state law, the communication does not constitute a protected activity unless the complaint "allege[s] the predicate for a reasonable, good faith belief that the behavior . . . violates the ADA." See id. at 216.

In this case, Plaintiff has alleged that he engaged in protected activity by contacting the EAP concerning his mental health disability issues on several occasions. However, Plaintiff's calls to the EAP are not sufficient to constitute communication of his belief that discriminatory practices were occurring based on Plaintiff's disability.

5

Plaintiff's first call to the EAP took place in February of 2017. Plaintiff states that when he came back to work in February of 2017, he went to his direct supervisor, Robert Sherrill ("Mr. Sherrill"). (Trial Tr., Sept. 10, 2018, pp. 138, 209). Plaintiff told Mr. Sherrill that he was depressed because of his medical problems and needed to talk to someone, and Mr. Sherrill gave Plaintiff the number to the EAP. (Trial Tr., Sept. 10, 2018, pp. 77, 138). Plaintiff stated that he called the EAP and was able to talk to someone and begin the process of setting up counseling sessions. (Trial Tr., Sept. 10, 2018, pp. 138, 140).

The Court finds that Plaintiff's first call to the EAP did not constitute protected activity because Plaintiff did not communicate to his employer his belief that the Defendant had engaged in a form of employment discrimination. First, the Court notes that it was Defendant, not Plaintiff, who initially raised the option of calling the EAP. Further, in neither Plaintiff's initial statements to Mr. Sherrill about why he needed to talk to someone, nor in Plaintiff's testimony about his conversations to the EAP, did Plaintiff ever communicate his belief that Defendant had engaged in a form of employment discrimination. Rather, Plaintiff's first call to the EAP related only to his own feelings of depression that were tied to his medical problems. As such, Plaintiff's first call to the EAP, alone, is not sufficient to allege that he communicated his belief to Defendant that discriminatory practices were occurring.

Plaintiff's second call to the EAP took place on March 27, 2017. When asked about the events leading up to Plaintiff's call on March 27, 2017, Plaintiff stated:

> Well, I came in anxious. I hadn't slept. I have a problem sleeping anyway. I came in very anxious from the meeting we had had on the 26th and what had happened. So I got - - I had determined that - - I had made up my mind to ask him for the change that day. And after he didn't change any stuff, I became very anxious and stuff. And I really didn't want to go out and work with him . . . I was going through that break room to Linda Stokes' office[, in Human Resources,' to ask her for the number to employee assistance.

6

(Doc. No. 8-2 at 18, Dep. Thompson, 66:9-21). Plaintiff did not speak to anyone at work about how he was feeling that day. (Trial Tr., Sept. 10, 2018, pp. 206-07). When Linda Stokes ("Ms. Stokes") asked Plaintiff if he was ok, Plaintiff replied that "Yes, everything's okay. I just need to talk to someone." (Doc. No. 8-2 at 19, Dep. Thompson, 71:12-13). Plaintiff did not offer any evidence that he communicated to Ms. Stokes a desire to complain about any unlawful practice, nor did he offer any evidence that he made the call to the EAP to challenge what he reasonably believed was unlawful activity. Rather, the only evidence offered at trial suggested that Plaintiff wanted to call the EAP to resolve his anxiety and feelings of depression. (See Trial Tr., Sept. 10, 2018, p. 137).

Furthermore, Plaintiff did not offer evidence that he complained about any unlawful activity in his call to the EAP. On his call to the EAP, Plaintiff stated that he was,

> . . . begging and pleading for help, and I asked them why they hadn't helped me because I had called them earlier . . . And I had told her the same thing verbatim[, from the first call to the EAP,] about what I had been going through, other than - - I think other than the back injury. . . I was going through other stuff at that time, my medical situation and stuff I was going through. I needed to talk to somebody."

(Doc. No. 8-2 at 19, Dep. Thompson, 71:22-72:7). Plaintiff explained to the EAP provider that he was upset, and he told the EAP provider that he did not know what he was capable of doing to other employees but that he may "hit him in the head, [throw] them in [the] chipper." (Trial Tr., Sept. 10, 2018, p. 208). Plaintiff was instructed to give the phone to his supervisor. Id. When Plaintiff handed the phone to Quinn Hall ("Mr. Hall"), the then interim division manager, he communicated to Mr. Hall that he was upset and "he felt like he would go off on someone." (Trial Tr., Sept. 11, 2018, p. 102-03).

The Court finds that neither Plaintiff's statements to his employer about his need to contact the EAP, his call to the EAP, nor his statements to his employer after his call to the EAP constitute

7

protected activities. Similar to the facts in Bowman, Plaintiff's statements did not allege or complain of any discriminatory conduct in violation of the ADA. Rather, the statements related to Plaintiff's feelings of being trapped by Mr. Sherrill's refusal to reassign him to a different work crew and his need to talk to someone. However, general complaints of unfair treatment in the workplace do not constitute protected activity. See Bowman, 173 F. Supp. 3d at 248. There is nothing about Plaintiff's statements from which his employer would have understood that Plaintiff was opposing discriminatory conduct. Further, Plaintiff's statements potentially threating the safety of other employees do not constitute protected activity. See Morris v. BellSouth Telecomm., Inc., 302 F.Supp.2d 515, 523 (M.D.N.C. Feb. 11, 2004) (holding that the plaintiff's retaliation claim fails because plaintiff's statements could not be construed as protected activity because they contain threats). As such, Plaintiff's second call is not sufficient to constitute communication to an employer of Plaintiff's belief that Defendant was violating Plaintiff's rights under the ADA. See Johnson, 309 F. App'x at 686 ("[I]t is fundamental that to receive protection . . . [a plaintiff] must be engaging reasonably in activities *opposing* discrimination.") (internal quotations omitted and emphasis added). Because Plaintiff's conduct fails to constitute a protected activity, Plaintiff has failed to satisfy a prima facie case of retaliation under the ADA. Accordingly, the Court reverses its prior ruling on protected activity and grants Defendant's motion for judgment as a matter of law as to Plaintiff's retaliation claim.

## CONCLUSION

IT IS THEREFORE ORDERED that for the reasons explained above:

1. Defendant's Motion (Doc. No. 34) is GRANTED as to Defendant's Motion for Judgment as a Matter of Law and DENIED AS MOOT as to Defendant's Motion for a New Trial.

2. Plaintiff's Post-Trial Motion for ADA Retaliation Damages (Doc. No. 35) is DENIED AS MOOT; and

3. Plaintiff's Motion for Attorney's Fees and Costs (Doc. No. 41) is DENIED AS MOOT.

Signed: October 18, 2018

Frank D. Whitney
Chief United States District Judge